Anthony M. Keats (SBN 123672)
*akeats@stubbsalderton.com*
Konrad K. Gatien (SBN 221770)
*kgatien@stubbsalderton.com*
Barak J. Kamelgard (SBN 298822)
*bkamelgard@stubbsalderton.com*
STUBBS ALDERTON & MARKILES LLP
1453 3rd Street Promenade, Suite 300
Santa Monica, CA 90401
Telephone: (310) 746-9800
Facsimile: (310) 746-9820

Brian W. Brokate (*pro hac vice* pending)
*bwbrokate@gibney.com*
John Macaluso (*pro hac vice* pending)
*jmacaluso@gibney.com*
Maja Szumarska (*pro hac vice* pending)
*mszumarska@gibney.com*
GIBNEY, ANTHONY & FLAHERTY, LLP
665 Fifth Avenue
New York, NY 10022
Telephone: (212) 688-5151
Facsimile: (212) 688-8315

Attorneys for Plaintiff
ROLEX WATCH U.S.A., INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROLEX WATCH U.S.A., INC., <br><br> Plaintiff, <br><br> v. <br><br> JACK ALFRED MARTIN and NANCIE ANN MARTIN, individually and collectively d/b/a PRETTY PLEASE, <br><br> Defendants. | **CASE NO. 8:17-CV-00014** <br><br> **COMPLAINT FOR:** <br><br> 1. **FEDERAL TRADEMARK COUNTERFEITING (15 U.S.C. § 1114);** <br><br> 2. **FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)** |

COMPLAINT

Plaintiff Rolex Watch U.S.A., Inc. ("Rolex") through its attorneys, complaining of defendants Jack Alfred Martin and Nancie Ann Martin, both individually and collectively d/b/a Pretty Please (hereinafter collectively referred to as "Defendants") hereby alleges as follows:

## INTRODUCTION

1. This is a suit by Rolex against Defendants for injunctive relief, statutory damages, treble damages and/or profits, compensatory damages, pre-judgment interest, attorneys' fees, investigators' fees and costs for trademark counterfeiting and trademark infringement. Defendants are being sued by Rolex as a result of Defendants' sale, offers for sale, distribution, promotion and advertisement of merchandise bearing counterfeits and infringements of Rolex's federally registered trademarks.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the federal trademark claims asserted in this action under 15 U.S.C. § 1121, and 28 U.S.C. § 1331 and 28 U.S.C. § 1338.

3. Defendants are subject to the Court's jurisdiction because they have committed the acts complained of herein in this District and do business in this District.

4. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District.

## THE PARTIES

5. Rolex is a corporation duly organized and existing under the laws of the State of New York, having an office and principal place of business at 665 Fifth Avenue, New York, New York, 10022.

6. Defendant Nancie Ann Martin ("Nancie") is a resident of the State of California residing at 32005 via Pavo Real, Trabuco Canyon, CA 92679.

7. Defendant Jack Alfred Martin ("Jack") is a resident of the State of California residing at 32005 via Pavo Real, Trabuco Canyon, CA 92679.

-1-

COMPLAINT

8. Upon information and belief, Defendants Nancie and Jack are married.

9. Upon information and belief, Jack and Nancie do business under the name "Pretty Please". "Pretty Please" is a fictitious business name that is not registered to do business in California or in any other state.

## FACTUAL ALLEGATIONS

**A. Rolex's Famous Products and Trademarks**

10. Rolex is the exclusive distributor and warrantor in the United States of Rolex watches, all of which bear one or more of the Rolex Registered Trademarks as defined below.

11. Rolex watches are identified by the trade name and trademark ROLEX and one or more of the Rolex Registered Trademarks.

12. Rolex is responsible for assembling, finishing, marketing and selling in interstate commerce high quality Rolex watches, watch bracelets and related products for men and women (hereinafter referred to as "Rolex Watches").

13. Rolex is responsible for maintaining control over the quality of Rolex products and services in this country.

14. Rolex has developed an outstanding reputation because of the uniform high quality of Rolex Watches and the Rolex Registered Trademarks are distinctive marks used to identify these high quality products originating with Rolex.

15. Rolex owns numerous trademarks, including, but not limited to, the trademarks and trade names ROLEX, CROWN DEVICE (design), COSMOGRAPH, DAYTONA, OYSTER PERPETUAL, and YACHT-MASTER.

16. Rolex is the owner of, including but not limited to, the following federal trademark registrations in the U.S. Patent and Trademark Office:

///
///
///
///

| Trademark | Reg. No. | Reg. Date | Goods |
|---|---|---|---|
| ♛ CROWN DEVICE | 657,756 | 1/28/1958 | Timepieces of all kinds and parts thereof. |
| DATEJUST | 674,177 | 2/17/1959 | Timepieces and parts thereof. |
| DAY-DATE | 831,652 | 7/4/1967 | Wrist watches. |
| DAYTONA | 2,331,145 | 3/21/2000 | Watches. |
| EXPLORER | 2,518,894 | 12/18/2001 | Watches. |
| EXPLORER II | 2,445,357 | 4/24/2001 | Watches. |
| GMT-MASTER | 683,249 | 8/11/1959 | Watches. |
| GMT-MASTER II | 2,985,308 | 8/16/2005 | Watches and parts thereof. |
| OYSTER | 239,383 | 3/6/1928 | Watches, movements, cases, dials, and other parts of watches. |
| OYSTER PERPETUAL | 1,105,602 | 11/7/1978 | Watches and parts thereof. |
| PRESIDENT | 520,309 | 1/24/1950 | Wristbands and bracelets for watches made wholly or in part or plated with precious metals, sold separately from watches. |
| ROLEX | 101,819 | 1/12/1915 | Watches, clocks, parts of watches and clocks, and their cases. |
| ROLEX DAYTONA | 1,960,768 | 3/5/1996 | Watches. |
| ROLEX DEEP SEA | 3,703,603 | 10/27/2009 | Watches. |
| SEA-DWELLER | 860,527 | 11/19/1968 | Watches, clocks and parts thereof. |
| SUBMARINER | 1,782,604 | 7/20/1993 | Watches. |
| TURN-O-GRAPH | 2,950,028 | 5/10/2005 | Watches and parts thereof. |
| YACHT-MASTER | 1,749,374 | 1/26/1993 | Watches. |
| COSMOGRAPH | 733,081 | 6/19/1962 | Watches. |

Correct and true copies of Rolex's federal trademark registrations (hereinafter collectively referred to as the "Rolex Registered Trademarks") are attached hereto as **Exhibit 1**.

17. The Rolex Registered Trademarks are arbitrary and fanciful and are entitled to the highest level of protection afforded by law.

18. Rolex and its predecessors have used the Rolex Registered Trademarks for many years on and in connection with Rolex Watches and related products.

19. Based on Rolex's extensive advertising, sales and the wide popularity of Rolex products, the Rolex Registered Trademarks are now famous and have been famous since well prior to the activities of the Defendants complained of herein. Rolex Registered Trademarks have acquired secondary meaning so that any product or advertisement bearing such marks is immediately associated by consumers, the public and the trade as being a product or affiliate of Rolex.

20. Rolex has gone to great lengths to protect its name and enforce the Rolex Registered Trademarks.

21. The Rolex Registered Trademarks are valid and subsisting and in full force and effect and have become incontestable pursuant to 15 U.S.C. § 1065.

**B. Defendants' Counterfeiting and Infringing Activities**

22. Rolex hereby incorporates all prior allegations by reference.

23. Upon information and belief, long after Rolex's adoption and use of the Rolex Registered Trademarks on its products and after Rolex's federal registration of the Rolex Registered Trademarks, Defendants began offering for sale and selling merchandise bearing counterfeits and infringements of the Rolex Registered Trademarks as those marks appear on Rolex's products and as shown in the Rolex Registered Trademarks attached hereto as **Exhibit 1**.

24. On or about December 23, 2015, Rolex's investigator discovered that Defendants were offering, promoting, distributing, offering for sale and selling watches bearing counterfeits and infringements of the Rolex Registered Trademarks through the website, www.craigslist.org ("Craigslist"). Defendants listed the infringing watches as starting at $180, far below the retail price of Rolex Watches ("Craigslist Listing"). The description provided:

> I just got a new supply of fantastic watches! Nothing but very high end replicas of watches hand selected based on quality, movement and popularity. Email me for availability; they start at $180 for the Rolex Submariner up

to $420 for the Richard Mille. Other watches: Panerai, Daytona, Breitling, and Tag Heuer. All of my watches come with a one year guarantee!

A true and correct copy of the Craigslist Listing is attached hereto as **Exhibit 2** and incorporated herein by reference.

25. Rolex's investigator contacted Defendants by email and expressed interest in purchasing watches.

26. Defendant Jack contacted Rolex's investigator by telephone and scheduled a meeting for later that day.

27. Rolex's investigator met with Jack in a parking lot of a grocery store located in the City of Rancho Santa Margarita, California.

28. Jack escorted Rolex's investigator to his vehicle, where the defendant presented twelve (12) watches of various luxury brands, including five (5) watches bearing counterfeits and infringements of the Rolex Registered Trademarks. Jack also displayed to Rolex's investigator a price sheet that itemized the various watch models and brands the Defendants offer for sale.

29. Jack informed Rolex's investigator that his wife, defendant Nancie, is a flight attendant and often travels to China for work. He further explained that when Nancie travels to China, she purchases counterfeit products, including purses, watches, and jewelry, for re-sale in the United States.

30. Rolex's investigator purchased two (2) watches from Defendant, including one (1) watch bearing counterfeits and infringements of the Rolex Registered Trademarks at $180.00, for a total of $360.00 (the "First Purchase").

31. Rolex's investigator has received training in the identification of watches bearing counterfeits and infringements of the Rolex Registered Trademarks. Rolex's investigator examined the Rolex watches from the First Purchase and determined that they bear counterfeits and infringements of the Rolex Registered Trademarks.

32.  On or about December 28, 2015, Rolex's investigator placed a telephone call to Jack and scheduled a second meeting with him for December 30, 2015.

33.  On or about December 28, 2015, Rolex's investigator met with the Orange County Sherriff's Department ("OCSD") and informed the OCSD of the meeting taking place on December 30, 2015.

34.  On or about December 30, 2015, Rolex's investigator and an undercover officer met with Jack at Defendants' residence located at 32005 via Pavo Real in the City of Trabuco Canyon, California 92679 ("Defendants' Residence").

35.  Jack offered to sell approximately (12) counterfeit watches, including approximately four (4) watches bearing counterfeits and infringements of the Rolex Registered Trademarks. The counterfeit watches were displayed for sale on Jack's living room table.

36.  Jack subsequently escorted Rolex's investigator and the undercover officer to a guest room on the first floor of Defendants' Residence, which he referred to as his "wife's little boutique". The following items were displayed for sale with price tags: ten (10) belts, five (5) business card holders, fifteen (15) cellphone cases, six (6) pairs of earrings, thirty-three (33) handbags, fifteen (15) make up bags, six (6) necklaces, six (6) scarves, three (3) shirts, ten (10) pairs of sunglasses and twenty-four (24) wallets. Jack informed Rolex's investigator and the undercover officer that these items are counterfeit and were purchased from China by defendant Nancie.

37.  Rolex's investigator purchased one (1) watch bearing counterfeits and infringements of the Rolex Registered Trademarks for $270.00 (the "Second Purchase"). Rolex's investigator also purchased another watch, three (3) handbags, one (1) belt and one (1) pair of sunglasses, all of various luxury brands. Rolex's investigator received a sales receipt and business card from Jack.

38.  On January 12, 2016, Rolex's investigator arranged a meeting by telephone with Jack and Nancie for January 13, 2016. Rolex's investigator informed the OCSD about the meeting.

39. On January 13, 2016, Rolex's investigator and an undercover officer met with Jack and Nancie at Defendants' Residence.

40. Jack offered for sale fifteen (15) watches, including six (6) watches bearing counterfeits and infringements of the Rolex Registered Trademarks to Rolex's investigator and the undercover officer.

41. Nancie admitted to Rolex's investigator and the undercover officer that she had been selling counterfeit products for approximately two years.

42. Nancie provided Rolex's investigator with Defendants' business card, which identified Nancie as the owner of a fictitious business called "Pretty Please".

43. Rolex's investigator purchased one (1) watch bearing counterfeits and infringements of the Rolex Registered Trademarks for $180.00 (the "Third Purchase"). Rolex's investigator also purchased (1) handbag, one (1) cell phone case, and one (1) belt, one (1) pair of sunglasses.

44. On or about January 20, 2016, the OCSD served a search warrant on Defendants at Defendants' Residence.

45. During the search warrant investigation, the OCSD recovered a total of two hundred and ten (210) items, including four (4) watches bearing counterfeits and infringements of the Rolex Registered Trademarks (the "Seized Rolex Watches"). Photographs of the Seized Rolex Watches are attached hereto as **Exhibit 3**.

46. The OCSD arrested Defendants during the search warrant investigation.

47. Rolex's investigator examined the Seized Rolex Watches and determined that they bear counterfeits and infringements of the Rolex Registered Trademarks.

48. Rolex's investigator learned from law enforcement that Defendants were convicted of Trademark Counterfeiting, a felony, on or about April 29, 2016.

49. Despite having knowledge that the watches were replicas, Defendants offered for sale and sold watches bearing counterfeits of the Rolex Registered Trademarks. Defendants' conduct is clearly willful.

50. Defendants have published and placed into circulation of the general public advertisements that infringe Rolex's intellectual property rights and caused other damages not relating to the infringement.

### C. Summary of Defendants' Illegal Activities

51. Defendants intentionally, maliciously and willfully offered for sale and sold watches bearing counterfeits of one or more of the Rolex Registered Trademarks, despite knowledge that such sales were illegal.

52. Defendants' acts were calculated to confuse and to deceive the public and were performed with full knowledge of Rolex's rights.

53. Defendants are not now, nor have they ever been, associated, affiliated, connected with, endorsed or sanctioned by Rolex.

54. Rolex has never authorized or consented in any way to the use by Defendants of the Rolex Registered Trademarks or marks confusingly similar thereto.

55. Defendants' use of the Rolex Registered Trademarks or marks substantially indistinguishable and/or confusingly similar thereto in connection with Defendants' products is likely to cause consumers, the public and the trade to erroneously believe that the products provided by Defendants emanate or originate from Rolex, and/or that said products are authorized, sponsored, or approved by Rolex, even though they are not. This confusion causes irreparable harm to Rolex and weakens and dilutes the distinctive quality of the Rolex Registered Trademarks.

56. By using counterfeits and infringements of the Rolex Registered Trademarks on their goods, Defendants are trading on the goodwill and reputation of Rolex and creating the false impression that Defendants' goods are affiliated with Rolex.

57. Defendants have been unjustly enriched by illegally using and misappropriating Rolex's intellectual property for their own financial gain. Furthermore, Defendants have unfairly benefited and profited from Rolex's

outstanding reputation for high quality products and its significant advertising and promotion of Rolex watches and the Rolex Registered Trademarks.

58. Defendants have disparaged Rolex, its Rolex Registered Trademarks and its products by creating a false association with Rolex, its genuine goods and its Rolex Registered Trademarks.

59. Rolex has no control over the nature and quality of the products sold by Defendants, which bear counterfeits and infringements of the Rolex Registered Trademarks.

60. Among other things, Defendants' promotion, advertisement and provision of its goods have and will reflect adversely on Rolex as the believed source of origin thereof; hamper continuing efforts by Rolex to protect its outstanding reputation for high quality, originality and distinctive goods; and tarnish the goodwill and demand for genuine Rolex watches and products.

61. Upon information and belief, Defendants have acted with reckless disregard for Rolex's rights and/or were willfully blind in connection with unlawful activities. Upon information and belief, Defendants were willfully and maliciously engaged in infringing activities. Therefore, this case constitutes an exceptional case under 15 U.S.C. § 1117(a).

62. Rolex has suffered irreparable harm and damages as a result of Defendants' conduct. The injuries and damages sustained by Rolex have been directly and proximately caused by the Defendants' wrongful offer for sale and sale of their goods bearing counterfeits and/or infringements of the Rolex Registered Trademarks.

63. Rolex has no adequate remedy at law.

64. Defendants' wrongful acts will continue unless enjoined by the Court. Accordingly, Defendants must be restrained and enjoined from any further counterfeiting or infringement of the Rolex Registered Trademarks.

///
///

# FIRST CLAIM FOR RELIEF

## (Trademark Counterfeiting, 15 U.S.C. § 1114)

65. Rolex hereby incorporates by reference all prior allegations as though fully set forth herein.

66. Defendants have used spurious designations that are identical with, or substantially indistinguishable from, the Rolex Registered Trademarks on goods covered by registrations for the Rolex Registered Trademarks.

67. Defendants have intentionally used these spurious designations, knowing they are counterfeit, in connection with the advertisement, promotion, sale, offering for sale and distribution of goods.

68. Defendants' use of the Rolex Registered Trademarks to advertise, promote, offer for sale, distribute and sell watches bearing counterfeits was and is without the consent of Rolex.

69. Defendants' unauthorized use of the Rolex Registered Trademarks on and in connection with their sale, offering for sale and distribution of watches constitutes Defendants' use of the Rolex Registered Trademarks in commerce.

70. Defendants' unauthorized use of the Rolex Registered Trademarks as set forth above is likely to:

    (a) cause confusion, mistake and deception;

    (b) cause the public to believe that their watches are the same as Rolex's watches and/or that they are authorized, sponsored or approved by Rolex or that they are affiliated, connected or associated with or in some way related to Rolex; and

    (c) result in Defendants unfairly benefiting from Rolex's advertising and promotion and profiting from the reputation of Rolex and its Rolex Registered Trademarks all to the substantial and irreparable injury of the public, Rolex and the Rolex Registered Trademarks and the substantial goodwill represented thereby.

71. Defendants' acts constitute willful trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

72. By reason of the foregoing, Defendants are liable to Rolex for: (a) statutory damages in the amount of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c) of the Lanham Act, or, at Rolex's election, an amount representing three (3) times Rolex's damages and/or Defendants' illicit profits; and (b) reasonable attorneys' fees, investigative fees and pre-judgment interest pursuant to 15 U.S.C. § 1117(b).

## SECOND CLAIM FOR RELIEF

### Trademark Infringement (15 U.S.C. § 1114)

73. Rolex hereby incorporates by reference all prior allegations as though fully set forth herein.

74. Based on Rolex's extensive advertising under the Rolex Registered Trademarks, its extensive sales and the wide popularity of Rolex Watches, the Rolex Registered Trademarks have acquired a secondary meaning so that any product and advertisement bearing such trademarks is immediately associated by purchasers and the public as being a product and affiliate of Rolex.

75. Defendants' activities constitute Defendants' use in commerce of the Rolex Registered Trademarks. Defendants used the Rolex Registered Trademarks in connection with Defendants' sale, offers of sale, distribution, promotion and advertisement of their goods bearing infringements and/or counterfeits of the Rolex Registered Trademarks.

76. Defendants have used the Rolex Registered Trademarks, knowing they are the exclusive property of Rolex, in connection with the sale, offers for sale, distribution, promotion and advertisement of their goods bearing counterfeits or infringements of the Rolex Registered Trademarks.

77. Defendants' activities create the false and misleading impression that Defendants are sanctioned, assigned or authorized by Rolex to use the Rolex

Registered Trademarks to advertise, manufacture, distribute, appraise, offer for sale or sell watches bearing the Rolex Registered Trademarks when Defendants are not so authorized.

78. Defendants engage in the aforementioned activity with the intent to confuse and deceive the public into believing that they and the watches they sell are in some way sponsored, affiliated or associated with Rolex, when in fact they are not.

79. Defendants' use of the Rolex Registered Trademarks has been without the consent of Rolex, is likely to cause confusion and mistake in the minds of the public and, in particular, tends to and does falsely create the impression that the goods advertised, promoted, distributed and sold by Defendants are warranted, authorized, sponsored or approved by Rolex when, in fact, they are not.

80. Defendants' unauthorized use of the Rolex Registered Trademarks has resulted in Defendants unfairly benefiting from Rolex's advertising and promotion, and profiting from the reputation of Rolex and the Rolex Registered Trademarks, to the substantial and irreparable injury of the public, Rolex and the Rolex Registered Trademarks and the substantial goodwill represented thereby.

81. Defendants' acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

82. By reason of the foregoing, Defendants are liable to Rolex for: (a) an amount representing three (3) times Rolex's damage and/or their illicit profits; and (b) reasonable attorney's fees, investigative fees and pre-judgment interest pursuant to 15 U.S.C. § 1117.

## **PRAYER FOR RELIEF**

WHEREFORE, Rolex respectfully requests that the Court order the following relief:

I. That the Court enter an injunction ordering that Defendants, their agents, servants, employees, and all other persons in privity or acting in concert with them be enjoined and restrained from:

(a) using any reproduction, counterfeit, copy, or colorable imitation of the Rolex Registered Trademarks to identify any goods or the rendering of any services not authorized by Rolex;

(b) engaging in any course of conduct likely to cause confusion, deception or mistake, or injure Rolex's business reputation or weaken the distinctive quality of the Rolex Registered Trademarks, Rolex's name, reputation or goodwill;

(c) using a false description or representation including words or other symbols tending to falsely describe or represent their unauthorized goods as being those of Rolex or sponsored by or associated with Rolex and from offering such goods in commerce;

(d) further infringing or diluting the Rolex Registered Trademarks by manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying or otherwise disposing of any products not authorized by Rolex bearing any simulation, reproduction, counterfeit, copy or colorable imitation of the Rolex Registered Trademarks;

(e) using any simulation, reproduction, counterfeit, copy or colorable imitation of the Rolex Registered Trademarks in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any unauthorized products in such fashion as to relate or connect, or tend to relate or connect, such products in any way to Rolex, or to any goods sold, manufactured, sponsored or approved by, or connected with Rolex;

(f) making any statement or representation whatsoever, or using any false designation of origin or false description, or performing

any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any services provided, products manufactured, distributed, sold or offered for sale, or rented by Defendants are in any way associated or connected with Rolex, or are provided, sold, manufactured, licensed, sponsored, approved or authorized by Rolex;

(g)  engaging in any conduct constituting an infringement of any of the Rolex Registered Trademarks, of Rolex's rights in, or to use or to exploit, said trademark, or constituting any weakening of Rolex's name, reputation and goodwill;

(h)  using or continuing to use the Rolex Registered Trademarks or trade names in any variation thereof on the Internet (either in the text of a website, as a domain name, or as a keyword, search word, metatag, or any part of the description of the site in any submission for registration of any Internet site with a search engine or index) in connection with any goods or services not directly authorized by Rolex;

(i)  hosting or acting as Internet Service Provider for, or operating or engaging in the business of selling any website or other enterprise that offers for sale any products bearing the Rolex Registered Trademarks;

(j)  acquiring, registering, maintaining or controlling any domain names that include the ROLEX trademark or any of the other Rolex Registered Trademarks or any marks confusingly similar thereto, activating any website under said domain names, or selling, transferring, conveying, or assigning any such domain names to any entity other than Rolex;

(k)  using any e-mail addresses to offer for sale any nongenuine

products bearing counterfeits of the Rolex Registered Trademarks;

(l) having any connection whatsoever with any websites that offer for sale any merchandise bearing counterfeits of the Rolex Registered Trademarks;

(m) secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, or displaying of all unauthorized products which infringe the Rolex Registered Trademarks; and

(n) effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (m).

II. That Defendants, within thirty (30) days of judgment, file and serve Rolex with a sworn statement setting forth in detail the manner and form in which they have complied with this injunction pursuant to 15 U.S.C. § 1116(a).

III. That Defendants be required to deliver up for destruction to Rolex all unauthorized materials bearing any of the Rolex Registered Trademarks in association with unauthorized goods or services and the means for production of same pursuant to 15 U.S.C. § 1118.

IV. Requiring Defendants to pay to Rolex such damages Rolex has sustained as a consequence of their counterfeiting and infringement of the Rolex Registered Trademarks and to account for all gains, profits and advantages derived by Defendants from the sale of their infringing merchandise bearing the Rolex Registered Trademarks, and that the award to Rolex be trebled as provided for under 15 U.S.C. §

1117; alternatively, that Rolex be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of up to $2,000,000 for each trademark that Defendants have willfully counterfeited and infringed.

V. Ordering that Rolex recover the costs of this action, together with reasonable attorneys' and investigators' fees and pre-judgment interest in accordance with 15 U.S.C. § 1117.

VI. Directing that this Court retain jurisdiction of this action for the purpose of enabling Rolex to apply to the Court at any time for such further orders and interpretation or execution of any Order entered in this action, for the modification of any such Order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

VII. Ordering that pursuant to 11 U.S.C. § 523(a)(6), Defendants be prohibited from a discharge under 11 U.S.C. § 727 for malicious, willful and fraudulent injury to Rolex.

VIII. Due to the advertising injury caused to Rolex, Defendants be required to deliver to Rolex for destruction, all goods that were being advertised, promoted or offered for sale, as well as any and all catalogs, circulars, or other printed material in their possession or control displaying or promoting the infringing goods that were or are being advertised, promoted, or offered for sale.

///
///
///
///
///
///
///
///
///

IX. Awarding to Rolex such other and further relief as the Court may deem just and proper, together with the costs and disbursements that Rolex has incurred in connection with this action.

Respectfully submitted,

STUBBS ALDERTON & MARKILES, LLP

Dated: January 5, 2017

By: /s/Anthony M. Keats
Anthony M. Keats
Konrad K. Gatien
Barak J. Kamelgard

GIBNEY, ANTHONY & FLAHERTY, LLP
Brian W. Brokate (*pro hac vice* pending)
John Macaluso (*pro hac vice* pending)
Maja Szumarska (*pro hac vice* pending)

Attorneys for Plaintiff
ROLEX WATCH U.S.A., INC.